**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| LOUIS TEHAN, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 6:23-cv-03129-SRB |
| | ) | **CLASS ACTION** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MTC HOLSTERS, LLC, d/b/a CROSSBREED HOLSTERS, | ) ) ) | |
| Defendant. | ) ) | |

<u>**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**</u>

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................1

II.  SUMMARY OF THE LITIGATION...................................................................3

    A. Factual Allegations........................................................................................3

    B. Litigation History ..........................................................................................3

        1.   *Discovery* ..............................................................................................3

        2.   *Negotiations and Mediation*................................................................4

III. LEGAL ARGUMENT .........................................................................................4

    A.  The Settlement Falls Within the Range of Reasonableness ...................... 6

        1.   *Plaintiff and Counsel Have Adequately Represented the Class*............6

        2.   *The Settlement Resulted from Informed, Arm's-Length Negotiations*................7

        3.   *The Relief Provided for the Class Is Adequate* ...................................8

        4.   *The Settlement Structure Is Fair, Reasonable, and Adequate*...............9

        5.   *The Settlement Falls Within the Range of Possible Approval* ............10

        6.   *Experienced Counsel Recommend Approval*......................................12

    B.  The Proposed Settlement Class Should be Certified ............................... 12

        1.   *The Class Meets the Requirements of Rule 23(a)*...............................13

        2.   *The Class Meets the Requirements of Rule 23(b)(3)* ..........................14

        3.   *The Settlement Class Definitions Comport with the Class Definition in the Complaint* ........................................................................................16

    C.  The Proposed Notice and Notice Program Meet All Applicable Requirements . 16

        1.   *The Notice Plan Uses the Best Practicable Means to Reach Class Members* ....16

        2.   *The Proposed Notice Adequately Informs Class Members of Their Rights and Options*........................................................................................17

    D.  Settlement Class Counsel Should be Appointed ..................................... 17

    E.  Schedule ..................................................................................... 18

IV. CONCLUSION ..................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591, 620 (1997)................................................................. 15

*Bellows v. NCO Fin. Sys., Inc.*,
    No. 07-CV-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ................................. 5

*Cohn v. Nelson*,
    375 F. Supp. 2d 844, 852 (E.D. Mo. 2005)................................................................. 4

*Cottle v. Plaid Inc.*,
    340 F.R.D. 356, 365, 378 (N.D. Cal. 2021)............................................................... 10

*Cromeans v. Morgan Keegan & Co.*,
    303 F.R.D. 543, 551 (W.D. Mo. 2014) ...................................................................... 13

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171, 1174 (8th Cir. 1995) ......................................................................... 14

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) at 455 ......................................................................... 11

*Gaston v. Fabfitfun*,
    Case No. 2:20-cv-09534 (C.D.Cal.)......................................................................... 10

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010)...................................................... 8

*Holden v. Burlington N., Inc.*,
    665 F. Supp. 1398, 1414 (D. Minn. 1987) ............................................................... 11

*In re Anthem Data Breach*,
    327 F.R.D. 299, 329 (N.D.Cal. 2018)................................................................. 9, 10

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
    2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016) ..................................................... 9

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) ............................................. 8, 9

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021).......................... 10

Case 6:23-cv-03129-SRB    Document 47    Filed 10/15/24    Page 3 of 23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768, 784 (3d Cir. 1995) ................................................................................. 4

*In re Premera Blue Cross Data Breach*,
    Case No. 3:15-md-02633 (D.Or.) .............................................................................. 10

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
    716 F.3d 1057, 1063 (8th Cir. 2013) .......................................................................... 5

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
    2020 WL 4212811, *12 (N.D. Cal. July 22, 2020) ............................................... passim

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*,
    921 F.2d 1371, 1383 (8th Cir. 1990) .......................................................................... 4

*Marcus v. Kansas*,
    209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ............................................................... 7

*Marshall v. Nat'l Football League*,
    787 F.3d 502, 508 (8th Cir. 2015) .............................................................................. 5

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615, 628 (9th Cir. 1982) ............................................................................ 10

*Paxton v. Union Nat'l Bank*,
    688 F.2d 552, 561 (8th Cir. 1982) ............................................................................ 13

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140, 1148 (8th Cir. 1999) .......................................................................... 4

*Phillips Co. v. Shutts*,
    472 U.S. 797, 809 (1985) .......................................................................................... 15

*Schwartz v. Yahoo! Inc.*,
    No. 20-16633 (9th Cir. June 27, 2022) ....................................................................... 9

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................................... 14

*Stephens v. U.S. Airways Group, Inc.*,
    102 F. Supp. 3d 222, 229 (D.D.C. 2015) ................................................................... 5

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036, 1045 (2016) ................................................................................... 14

iii

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 359 (2011) ......................................................................................... 13

**STATUTES/RULES**

**Federal**

Class Action Fairness Act, 28 U.S.C. § 1715(b) ............................................................4

Fed. R. Civ. P. Rule 23 ..................................................................................... *passim*

**SECONDARY SOURCES**

*Newberg on Class Actions § 13:1 (5th ed.)* ..................................................................6

## I.    INTRODUCTION

Plaintiff Louis Tehan ("Plaintiff" or "Class Representative") and Defendant MTC Holsters, LLC, d/b/a Crossbreed Holsters ("Crossbreed" or "Defendant") have reached a settlement that will create a common fund settlement of $195,000 to provide substantial relief to Settlement Class Members, including: (i) monetary reimbursement of up to $500 for Out-of- Pocket Losses resulting from the Data Breach, including up to three hours of time spent responding to the Data Breach, compensated at rate of $35 per hour, (ii) monetary reimbursement of up to $2,500 for Extraordinary Out-of- Pocket Losses resulting from the Data Breach, (iii) an alternative cash payment (in lieu of Out-of-Pocket Losses and Lost Time and Extraordinary Out-of-Pocket Losses), (iv) costs of notice and administration, Attorneys' Fees and Expenses and a Service Award for the Settlement Class Representative.

Considering the substantial and meaningful benefits conferred upon Settlement Class Members, and the significant risks faced through continued litigation, the terms of the Settlement are "fair, reasonable, and adequate" in accordance with Federal Rules of Civil Procedure Rule 23(e)(2). This Court should preliminarily approve the proposed Settlement, appoint Class Counsel and the Settlement Class Representative, authorize the provision of notice to the Settlement Class, and set a hearing to consider final approval of the Settlement. In support of this Motion, Plaintiff submits the following Exhibits: Settlement Agreement ("SA") (**Exhibit 1**), the proposed Claim Form (**Exhibit A** to the SA) and the proposed Settlement Notice (**Exhibit B** to the SA).

On or about January 17, 2023, Crossbreed began sending notice to 6,042 individuals whose personally identifiable information were potentially accessed and exfiltrated by an unauthorized third party that accessed this data on Defendant's system, including Plaintiff's and Class Members' names, debit card numbers, credit card numbers, card expiration dates and access codes (these

1

types of information, *inter alia*, being thereafter referred to collectively as "personally identifiable information" or "PII").

On April 27, 2023, Plaintiff Louis Tehan filed his Complaint, alleging (i) Negligence, (ii) Breach of Confidence, (iii) Breach of Implied Contract, (iv) Breach of the Implied Covenant of Good Faith and Fair Dealing and (v) Breach of the Fiduciary Duty of Confidentiality.

On June 28, 2023, Defendant filed a Motion to Dismiss.

On July 17, 2023, the Court granted in part and denied in part Defendant's Motion to Dismiss, dismissing Plaintiff's claims for Breach of Confidence and Breach of the Fiduciary Duty of Confidentiality, while upholding Plaintiff's claims for Negligence, Breach of Implied Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.

Following the Court's ruling on Defendant's Motion to Dismiss, Plaintiff and Defendant (collectively, the "Parties") agreed to undertake mediation. On January 17, 2024, the Parties undertook a full-day mediation with the Honorable Charles Atwell (Ret.) which resulted in a settlement in principle. The resulting Settlement Agreement provides for the creation of a $195,000 Settlement Fund and delivers substantial benefits to the Settlement Class. The Settlement Agreement Provides for direct *pro-rata* cash benefits to Class Members, including: (i) reimbursement for ordinary out-of-pocket losses and attested time (at a rate of $35 per hour for up to 3 hours), up to $500 per Class Member, and/or (ii) reimbursement for extraordinary out-of-pocket losses like identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information caused by the data or, (iii) a direct cash payment in lieu of reimbursement of ordinary and/or extraordinary out-of-pocket losses. All Class Members who make a valid claim will receive a cash payment consisting of a *pro-rata* share of the remainder of the Settlement Fund. These monetary benefits represent strong recovery when

viewed in comparison to what could be achieved through trial even *before* taking into account the significant risk, cost and delay of continued litigation.

## II.       SUMMARY OF THE LITIGATION

### A. Factual Allegations

Plaintiff alleges unauthorized individuals exploited a vulnerability in Defendant's computer systems and accessed Defendant's network and accessed and/or exfiltrated Class Members' sensitive, non-public PII (the "Data Breach"). Complaint ("CMP") ¶ 2. Plaintiff alleges the Data Breach began on or prior to December 2022. *Id*. Defendant sent notice to potentially affected individuals beginning on January 17, 2023. CMP ¶ 4. Plaintiff received such notice of the Data Breach, and subsequently filed suit in this Court seeking damages for the Class for lost time, threat of future harm, out-of-pocket expenses and other injuries related to this event. CMP ¶ 18-21.

### B. Litigation History

#### 1.       *Discovery*

Proposed Class Counsel Laura Van Note of Cole & Van Note ("Class Counsel") has thoroughly investigated the key facts of this case. Declaration of Laura Van Note, ("Van Note Decl.") ¶ 9. Class Counsel's investigation, combined with the informal discovery exchanged in connection with mediation, provided Class Counsel with sufficient understanding about the relative strengths and weaknesses of the various claims and defenses at issue in this case to reach an informed decision and a fair resolution. *Id.*

3

2. _Negotiations and Mediation_

In final preparation for mediation, Class Counsel requested information tailored to developing a damages and penalties analysis for each of the primary claims identified in the operative Complaint. Van Note Decl., ¶ 10. On January 17, 2024, the Parties participated in a mediation before experienced mediator the Honorable Charles Atwell (Ret.) of Jay Daugherty Mediation & Arbitration. Van Note Decl., ¶ 11. At mediation, the Parties exchanged information and engaged in intensive discussions regarding their evaluations of the litigation and various aspects of the litigation, including the risks and delays of further litigation, the risks of proceeding with class certification, the law relating to the allegations, the evidence produced and analyzed and the possibility of appeals, among other things. _Id_. The Settlement Fund was negotiated first and separately from any discussion regarding attorney's fees, service awards and claims administrator fees. Van Note Decl., ¶ 20. The Parties ultimately reached a Settlement at mediation. Van Note Decl., ¶ 11. This resulted in the Settlement Agreement accompanying this Motion. _Id_.

## III.  LEGAL ARGUMENT

"The law strongly favors settlements." _Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1_, 921 F.2d 1371, 1383 (8th Cir. 1990); _see also Petrovic v. Amoco Oil Co._, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." _See, e.g._, _Cohn v. Nelson_, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting _In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig._, 55 F.3d 768, 784 (3d Cir. 1995)).

4

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11.41 (4th ed.); *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). In this regard, the judgment of class counsel in entering into a proposed class settlement is an important consideration. *Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (D.D.C. 2015) (crediting the judgment of class counsel, who was experienced in litigating and settling complex cases including class actions, that the settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-CV-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("[I]t is the considered judgment of experienced counsel that this settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

Judicial approval of class action settlements typically proceeds through three stages: (i) preliminary approval, where the court conducts an initial fairness review and decides whether to notify the class, (ii) a notice period, where class members are given an opportunity to review the settlement and object or comment, and (iii) a fairness hearing, where the court considers the overall class reaction and makes its final determination. *See* Fed. R. Civ. P. 23; *Newberg on Class Actions § 13:1 (5th ed.).*

This case is now at the preliminary approval stage, where counsel submits the proposed Settlement, and the Court makes a preliminary fairness evaluation, deciding whether it is likely to approve the Settlement such that Notice of the Settlement should be sent to the Class. That decision requires the Court to make several preliminary determinations: first, whether the proposed

Settlement is likely to be approved if notice is disseminated to the Class; second, whether the proposed Settlement Class is likely to be certified for purposes of judgment; third, whether the Parties' proposed Notice plan provides for the best notice practicable under the circumstances and the Settlement Administrator may disseminate notice; and fourth, the Court sets a schedule for notifying the Class and considering its reaction to the proposed Settlement. Fed. R. Civ. P. 23(c), (e).

Plaintiff requests that the Court grant preliminary approval of the Rule 23 settlement and direct that Notice be sent to the Settlement Class, consistent with the terms of the Settlement. In the sections that follow, Plaintiff offers analysis of each facet of the preliminary approval process.

### A.       The Settlement Falls Within the Range of Reasonableness

The 2018 amendments to Rule 23 direct the Parties to present proposed class settlements "in terms of a shorter list of core concerns." Fed. R. Civ. P. Rule 23(e)(2), 2018 Adv. Comm. Notes. These concerns, which Rule 23(e)(2) now requires courts to consider before approving a class settlement, include two concerns bearing on procedural fairness and two bearing on substantive fairness. *Id*. The two procedural concerns are (i) whether plaintiff and their counsel have adequately represented the class and (ii) whether the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. Rule 23(e)(2)(A)-(B). The two substantive concerns are (i) whether the relief provided for the class is adequate and (ii) whether the proposed settlement treats class members equitably relative to one another. Fed. R. Civ. P. Rule 23(e)(2)(C)-(D).

Here, these four core concerns favor the proposed Settlement.

### *1.       Plaintiff and Counsel Have Adequately Represented the Class*

The first procedural concern asks whether the proposed settlement was the result of adequate representation. Fed. R. Civ. P. Rule 23(e)(2)(A). One of the hallmarks of adequate

representation is a thorough investigation and assessment of the class members' claims. *See* Adv. Comm. Note.

Here, Class Counsel were well prepared to negotiate a beneficial settlement for Class Members. In addition to a comprehensive pre-filing investigation, Class Counsel sought early discovery that went to the heart of the case and had extended negotiations with Defendant. Van Note Decl. ¶¶ 6-7, 9-13.

Representative Plaintiff will request a service payment of $10,000 for his participation in this litigation. Representative Plaintiff researched and identified qualified counsel, participated in the settlement process, and risked being further targeted for identity theft by putting his name on this litigation.

2.   <u>The Settlement Resulted from Informed, Arm's-Length Negotiations</u>

The Settlement Agreement was negotiated by arm's-length bargaining between experienced counsel. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002). Here, the Parties' Settlement was reached after contentious negotiations consisting of a full-day mediation before the Honorable Charles Atwell (Ret.). Van Note Decl. ¶¶ 10-13. Judge Atwell is a respected and experienced neutral. Van Note Decl. ¶, 11. The Parties did not discuss Attorneys' Fees, Service Awards or Settlement Administration costs until after reaching agreement on the Class Settlement. Van Note Decl. ¶¶ 20-21. Following the mediation with Judge Atwell, where the Parties reached a settlement in principle, the Parties engaged in ongoing negotiations regarding the various terms set forth in the Settlement Agreement. Taking into consideration the Parties' preparation for the mediation, the length of negotiations and the involvement of a highly qualified private mediator, the proposed

7

Settlement should be presumed procedurally fair. Fed. R. Civ. P. Rule 23(e)(2)(B), 2018 Adv. Comm. Note.

### 3. *The Relief Provided for the Class Is Adequate*

The proposed Settlement provides meaningful monetary recovery in addition to important non-monetary relief. The benefits conferred are fair and adequate compared to other similar cases. Crossbreed's improved security protocols and policies are meaningful and will help minimize the risk of incidents of unauthorized access to Crossbreed customers' accounts. The collective relief is even more favorable considering the factors under Rule 23(e)(2)(C).

While Plaintiff believes his case is strong, ongoing litigation will require Plaintiff and the Class to take on significant risks of expenses, delays and negative outcomes. Data breach cases are particularly complex and expensive by nature. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) [hereinafter "*In re Equifax*"] (recognizing the complexity and novelty of issues in data breach class actions). Courts explicitly recognize data breach cases as among the most risky and uncertain of all types of class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

This case is no exception. It involves thousands of Class Members, complicated and technical facts and contested central issues relating to class certification, liability and damages. Defendant would surely oppose class certification and move for summary judgment (or seek similar dispositive relief). Establishing liability for such a breach (or an alternative theory of liability) at trial would require countless hours of costly investigation, discovery, reporting and testimony from data security and financial industry expert witnesses. Even if these were all

8

successful, given the relative novelty of the legal theories of the underlying claims, Plaintiff could face significant scrutiny on appellate review.

### 4.    *The Settlement Structure Is Fair, Reasonable, and Adequate*

"A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016). Because Class Members may have suffered varying types and degrees of injury, the Settlement permits Settlement Class Members to receive cash payments consistent with the categories of damages they incurred (i.e., lost time and/or unreimbursed expenses) and in what amount. In this respect, the Settlement achieves customized recovery to each Class Member and treats them fairly and equitably. As such, this type of claims process has been approved in numerous other cases involving data breaches and privacy infringements. *See, e.g.*, *In re Equifax*, 2020 WL 256132 at **2, 8; *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2020 WL 4212811, *12 (N.D. Cal. July 22, 2020), aff'd, *Schwartz v. Yahoo! Inc.*, No. 20-16633 (9th Cir. June 27, 2022) [hereinafter "*In re Yahoo!*"]; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 325, 328, 332 (N.D. Cal. 2018).

The claims process here is designed to be simple and fast, yet comprehensive enough to ensure fair and equitable treatment of potential individual damages. All Settlement Class Members may submit a claim that allows them to elect benefits, depending on their individual facts. Claimants can claim out-of-pocket expenses for unreimbursed payment card fees or bank fees, cell, internet or text charges, unreimbursed costs or charges for obtaining credit reports, credit freezes or credit monitoring or identity theft protection services, postage costs and lost time by simply checking the relevant box and inputting the amount claimed. S.A., **Ex. A**.

9

Courts have approved similar processes in data breach cases (*see, e.g.*, *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 365, 378 (N.D. Cal. 2021); *In re Yahoo!*, *supra*, 2020 WL 4212811 at *12), and the proposed plan here is favorable by comparison to numerous other settlements requiring documentation for analogous cash payments (*see, e.g.*, *In re Anthem*, 327 F.R.D. at 325, 328, 332 (approving claim process requiring supporting documentation for claims of lost time and out-of-pocket expenses)).

The settlement administrator has estimated, based on its experience with similar settlements, that the claims rate in this Settlement will likely fall between 3% and 6%. Van Note Decl., ¶ 31. This comports with Class Counsel's expectations as well, where based on previously approved similar processes in similar cases, Class Counsel expects that the claims-rate will be between 1% and 9%. This claims rate would not be unusual for a class settlement. *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021) (noting that consumer class actions typically have a claims rate between 4% and 9%). Nor would it be unusual for data breach settlements. *In re Anthem Data Breach*, 327 F.R.D. 299, 329 (N.D. Cal. 2018) (1.8% claims rate); *In re Premera Blue Cross Data Breach*, Case No. 3:15-md-02633 (D. Or.) (7.81% claims rate); *Gaston v. Fabfitfun*, Case No. 2:20-cv-09534 (C.D. Cal.) (5.27% claims rate).

5.    *The Settlement Falls Within the Range of Possible Approval*

When considering whether the amount of a Settlement is adequate, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). "A cash settlement amounting to only a fraction of the potential cash recovery (and the present proposed settlement is not such a recovery) does not in itself render

10

the settlement unfair or inadequate." *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987), quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) at 455. Plaintiff has analyzed the potential class recovery and offers the following explanation of the factors bearing on the amount of the compromise:

Defendant reported that 6,024 individuals were potentially affected by this security incident. As noted above, the Data Breach involves only names and payment card information. Since Plaintiff was the only individual to come forward and file a lawsuit, it is unclear how many of these 6,024 individuals will claim injury. Indeed, it follows that most, if not all, individuals who experienced any unauthorized charges to their accounts would have been reimbursed by their bank or card issuer pursuant to federal law[1] (though Class Members may still claim unreimbursed card or bank fees). Accordingly, the remaining compensable claims are for lost time and modest damages for out-of-pocket expenses (e.g., postage, paying for credit freezes, etc.). Reimbursement for Ordinary Losses and Attested Time of $500 per person represents more than enough to satisfy the vast bulk of potential claims, given the nature of the information involved here. Settlement Class Members who indeed experienced more severe damages can claim compensation for Extraordinary Losses of up to $2,500. Further, all Settlement Class Members may elect to receive an Alternative Cash Payment. Given the type of information involved, these represents an excellent outcome for the Class. Van Note Decl. ¶ 24.

Indeed, the Settlement compares favorably with other Settlements that have been approved in data breach matters. For example, the following chart identifies the per Class Member value based on the common fund settlement amount for certain recent cases that involved sensitive, private information:

---

[1] *See e.g.*, the Fair Credit Billing Act (15. U.S.C. 1666, *et seq.*).

| Case Name | Case Number | Settlement Amount | Class Size | Per Person |
|-----------|-------------|-------------------|------------|------------|
| *Cochran v. Kroger Co.* | No. 5:21-cv-01887 (N.D. Cal.) | $5,000,000 | 3,825,200 | $1.31 |
| *Thomsen v. Morley Companies, Inc.* | No. 1:22-cv-10271 (E.D. Mich.) | $4,300,000 | 694,679 | $6.19 |
| *Reynolds v. Marymount Manhattan College* | No. 1:22-cv-06846 (S.D.N.Y.) | $1,300,000 | 191,752 | $6.78 |
| *Boykin v. Choice Health Insurance, LLC* | No. 4:22-cv-03940 (D.S.C.) | $500,000 | 68,177 | $7.33 |
| *Tucker v. Marietta Area Health Care* | No. 2:22-CV-00184 (S.D. Ohio) | $1,750,000 | 216,478 | $8.08 |
| *Migliaccio v. Parker Hannifin Corp.* | No. 1:22-CV-00835 (N.D. Ohio) | $1,750,000 | 115,359 | $15.17 |
| *Lutz v. Electromed, Inc.* | No. 21-cv-2198 (D. Minn.) | $825,000 | 47,000 | $17.55 |
| *McKittrick v. Allwell Behavioral Health Services* | No. CH 2022-0174 | $650,000 | 31,944 | 20.35 |
| *Abrams v. Savannah College of Art & Design* | No. 1:22-cv-04297 (N.D. Ga.) | $375,000 | 16,890 | $22.20 |
| *Phelps v. Toyotetsu North America* | No. 6:22-cv-00106 (E.D. Ky.) | $400,000 | 11,916 | $33.57 |

6.   *Experienced Counsel Recommend Approval*

Class Counsel have substantial experience in complex class action litigation, including data privacy cases. Van Note Decl. ¶¶ 18-25, 31-33. Class Counsel fully endorse the Settlement as falling within the range of reasonableness. Van Note Decl. ¶¶ 31-32.

**B.   The Proposed Settlement Class Should be Certified**

If, at the preliminary approval stage, "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. Rule 23(e), 2018 Advisory Committee Note. Here, the Settlement Class meets all requirements of Rule 23(a) and Rule 23(b)(3) and can be certified by the Court.

12

**Numerosity.** The Settlement Class consists of approximately 6,042 individuals, making joinder of all members impracticable. Fed. R. Civ. P. Rule 23(a)(1). "In considering this requirement, courts examine the number of persons in the proposed class and factors such as the nature of the action, the size of the individual claims, and the inconvenience of trying the individual claims." *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 551 (W.D. Mo. 2014) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)). Here, it would be impractical to join thousands of individual plaintiffs from the United States to a single lawsuit. As such, the numerosity requirement is satisfied.

**Commonality.** Plaintiff's and Class Members' claims depend upon common contentions of fact and law that could be resolved for all through a single proceeding. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do") (internal quotations omitted). For example, Plaintiff's negligence claim turns on the contention that Defendant implemented sub-standard security protocols and procedures that allowed unauthorized users to gain access to Class Members' personal information. Additionally, Plaintiff's breach of implied contract claim turns on the common contentions that Crossbreed promised yet failed to use certain specific security measures. Complaint, ¶¶ 115-118. Each of these contentions depend only on the nature of Defendant's security protocols, which will be proven using generalized evidence applicable to the entire Class. *See In re Yahoo!*, 2020 WL 4212811 at *3 (certifying data breach Settlement class where common issues existed as to whether Yahoo! employed sufficient security measures to protect class members' personal information).

**Typicality.** "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d

1171, 1174 (8th Cir. 1995). Here, Plaintiff's claims are typical of the Settlement Class as they are all customers who experienced unauthorized access to their personal information. While it is likely that Plaintiff and the Class may allege varying degrees of injuries, each harm will be based on the same Data Breach and underlying conduct. The claims arise from the same nucleus of facts relating to Crossbreed's security protocols, pertain to a common defendant and are based on the same legal theories. Rule 23(a)(3) is satisfied.

**Adequacy.** Plaintiff is an adequate representative of the Settlement Class, as he actively participated in the litigation and continues to do so. Van Note Decl. ¶¶ 31-32. Representative Plaintiff does not have conflicts with other Class Members as their claims are co-extensive with those of the class, and they have retained experienced counsel to represent the Class's interests. *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). Class Counsel has decades of experience representing plaintiff in complex class actions, including other cases involving data privacy and cybersecurity. Van Note Decl. ¶¶ 18-25, 31-33. Class Counsel also vigorously pursued Plaintiff's claims and in engaged in extensive Settlement negotiations.

### 2. *The Class Meets the Requirements of Rule 23(b)(3)*

**Predominance.** The predominance requirement is satisfied when class members' claims can be proven using common, class-wide evidence rather than evidence that varies from class member to class member. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Because Plaintiff's claims are focused on the nature of Crossbreed's security policies and protocols, they are well-suited for class treatment. Crossbreed's liability can be established largely, if not entirely, through class-wide evidence. There would be little need for Class Members to present individualized evidence until the damages phase, and it is well established that the need for individualized findings as to the amount of damages is not enough to defeat class certification.

*In re Yahoo!, supra*, 2020 WL 4212811 at \*7 (court found common questions regarding the nature of Yahoo's security measures predominated).

**Superiority.** Rule 23(b)(3) requires a class action be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> "The matters pertinent to the findings include: (a) the class members' interest in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3).

In the context of these factors, the instant matter is superior as a class action as there is low interest in prosecuting a multitude of claims in a variety of forums and otherwise doing so in this matter would be overly laborious to the individual Class Members and the Courts. However, given that this case is in settlement context, the Court need not consider manageability issues because "the proposal is that there be no trial;" as such, manageability considerations are no obstacle to certification for purposes of Settlement. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, a class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Defendant. *See*, e.g., *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions…permit the Plaintiff to pool claims which would be uneconomical to litigate individually… [In such a case,] most of the Plaintiff would have no realistic day in court if a class action were not available."). Resolution of the predominant issues of fact and law via individual actions is impracticable because the amount in dispute for individual Class Members is too small, the technical issues involved are too complex, and the required expert testimony and document review is too costly. *See, Amchem Prods., Inc., 521 U.S. at 617.*

The class device is the superior method of adjudicating consumer claims against Defendant arising from unauthorized access to customer accounts because it promotes greater efficiency, and no realistic alternative exists. Courts have routinely recognized this in other data breach cases where class-wide settlements have been approved. *See, e.g.*, *In re Yahoo!*, *supra*, 2020 WL 4212811 at *8; *In re Equifax*, 2020 WL 256132 at *45.

        3.    *The Settlement Class Definitions Comport with the Class Definition in the Complaint*

The Settlement Class definitions are the same as those provided in the Complaint: the Nationwide Class of all individuals within the United States of America whose PII was exposed to unauthorized third parties as a result of the Data Breach discovered on December 5, 2022 and the Ohio Subclass of all individuals within the State of Ohio whose PII was stored by Defendant and/or was exposed to unauthorized third parties as a result of the Data Breach discovered by Defendant on December 5, 2022.

**C.    The Proposed Notice and Notice Program Meet All Applicable Requirements**

        1.    *The Notice Plan Uses the Best Practicable Means to Reach Class Members*

The Federal Rules require that, before final approval of a Settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. Rule 23(e)(1)(B). Where certified under Rule 23(b)(3), the notice must also be "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. Rule 23(c)(2)(B).

The notice plan meets these requirements. It provides for direct electronic or mailed notice to the 6,042 Class Members. This Notice is reasonably calculated to reach all Class Members and apprise them of the Settlement.

2.    *The Proposed Notice Adequately Informs Class Members of Their Rights and Options*

In accordance with Rule 23(c)(2)(B) and this District's procedural guidelines, the Notice sets forth in clear, concise and easily understood language all requisite information, including, *inter alia*, the nature of the action, the class definition, claims, issues, or defenses, the binding effect of a class judgment and all available rights under the Settlement. Van Note Decl. **Ex. A**.

**D.    Settlement Class Counsel Should be Appointed**

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. Rule 23(g)(1)(B). In making this determination, courts consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. Rule 23(g)(1)(A)(i-iv).

Here, Class Counsel have extensive experience prosecuting complex consumer class action cases, and specifically, data privacy cases. Van Note Decl. ¶¶ 17, 23-24, **Exhibit B**. Class Counsel meets all Rule 23(g)(1)(A) factors. Accordingly, the Court should appoint Laura Van Note of Cole & Van Note as Settlement Class Counsel.

17

### E. Schedule

| Event | Date |
|---|---|
| Settlement Administrator sends Notice to the Settlement Class (the "Notice Date") | Within 20 Days after Entry of Preliminary Approval Order |
| Last day for Settlement Class Members to opt out or object to the proposed Settlement | 45 Days after the Notice Date |
| Last day for Settlement Class Members to submit Claim Forms | 45 Days after the Notice Date |
| Date by which Class Counsel is to file Motion for Final Approval of Settlement and Petition for Award of Attorneys' Fees, Expenses and Service Awards | No later than 21 days prior to the Final Approval Hearing |
| Final Approval Hearing | _____ |

## IV. CONCLUSION

For these reasons, Plaintiff respectfully requests the Court grant preliminary approval of the proposed Class Action Settlement.

Dated:  October 15, 2024                          Respectfully Submitted,

By: */s/ Laura Van Note*
Laura Van Note, Esq., MO# 66292
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email:     lvn@colevannote.com

18