UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| LOUIS TEHAN, on behalf of himself and all others similarly situated, | Case No. 6:23-cv-03129-SRB |
| Plaintiff, | CLASS ACTION |
| v. | |
| MTC HOLSTERS, LLC, d/b/a CROSSBREED HOLSTERS, | |
| Defendant. | |

**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. SUMMARY OF SETTLEMENT AND NOTICE PROCESS ...............................................2

III. CASE SUMMARY................................................................................................................4

    A. Factual Allegations................................................................................................... 4

    B. Litigation History ..................................................................................................... 5

        1. Discovery..........................................................................................................5

        2. Negotiations and Mediation ............................................................................5

IV. LEGAL ARGUMENT...........................................................................................................7

    A. The Settlement Falls Within the Range of Reasonableness ..................................... 8

        1. Plaintiff and Counsel Have Adequately Represented the Class .........................9

        2. The Settlement Resulted from Informed, Arm's-Length Negotiations ............9

        3. The Relief Provided for the Class Is Adequate ....................................................10

        4. The Settlement Structure Is Fair, Reasonable, and Adequate .........................11

        5. The Settlement Falls Within the Range of Possible Approval..........................12

        6. Experienced Counsel Recommend Approval......................................................13

V. THE NOTICE PLAN MET THE REQUIREMENTS OF DUE PROCESS ....................13

VI. ATTORNEYS' FEES, COSTS, SERVICE AWARD AND SETTLEMENT ADMINISTRATION FEES ...................................................................................................14

    A. Class Counsel should be awarded their attorneys' fees and costs.......................... 14

    B. Plaintiff should receive a Service Award ................................................................. 14

    C. Reimbursement of Settlement Administration fees is appropriate....................... 15

VII. CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Bellows v. NCO Fin. Sys., Inc.*, No. 07-CV-01413,
  2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) .................................................................... 7

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................................................................. 7

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021) .................................................................................. 12

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .......................................................................................... 13

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ............................................................... 10

*Holden v. Burlington N., Inc.*,
  665 F. Supp. 1398, 1414 (D. Minn. 1987) .................................................................... 13

*Huyer v. Njema*,
  847 F.3d 923 (8th Cir. 2017) ......................................................................................... 15

*In re Anthem Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal 2018) ................................................................................... 11

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
  2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ................................................................. 11

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ........................................................... 10, 12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .............................................................................................. 7

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
  716 F.3d 1057 (8th Cir. 2013) ........................................................................................ 7

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ............................................................... 12

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*,
　921 F.2d 1371 (8th Cir. 1990) ............................................................................................... 7

*Marcus v. Kansas*,
　209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) .......................................................................... 9

*Marshall v. Nat'l Football League*,
　787 F.3d 502 (8th Cir. 2015) .................................................................................................. 7

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
　688 F.2d 615 (9th Cir. 1982) ................................................................................................ 13

*Petrovic v. Amoco Oil Co.*,
　200 F.3d 1140 (8th Cir. 1999) ................................................................................................ 7

*Phillips Petroleum Co. v. Shutts,*
　472 U.S. 797 (1985) .............................................................................................................. 13

*Quality Plus Servs. V. Nat'l Union Fire Ins. Co.*,
　 U.S. Dist LEXIS 7337 (E.D. Va 2020) ................................................................................ 11

*Schwartz v. Yahoo! Inc.*,
　No. 20-16633 (9th Cir. June 27, 2022) ................................................................................ 12

*Sciaroni v. Target Corp.*
　*(In re Target Corp. Customer Data Sec. Breach Litig.)*, 892 F.3d 968 (8th Cir. 2018) ........... 14

*Stephens v. U.S. Airways Group, Inc.*,
　102 F. Supp. 3d 222 (D.D.C. 2015) ........................................................................................ 7

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 8, 9, 10, 13, 14

**Other Authorities**

2018 Adv. Comm. Notes ............................................................................................................ 8

I.      INTRODUCTION

On November 4, 2024, this Court preliminarily approved the Settlement between Plaintiff Louis Tehan and Defendant MTC Holsters, LLC, d/b/a Crossbreed Holsters ("Defendant"), and ordered that notice be given to the Class. (Doc. 52) The Settlement negotiated on behalf of the Class establishes a $195,000 settlement fund. Settlement Class Members who submitted a valid claim may elect one of the following benefits: (i) monetary reimbursement of up to $500 for Out-of- Pocket Losses resulting from the Data Breach, including up to three hours of time spent responding to the Data Breach, compensated at rate of $35 per hour, (ii) monetary reimbursement of up to $2,500 for Extraordinary Out-of- Pocket Losses resulting from the Data Breach, (iii) an alternative cash payment (in lieu of Out-of-Pocket Losses and Lost Time and Extraordinary Out-of-Pocket Losses), (iv) costs of notice and administration, Attorneys' Fees and Expenses and a Service Award for the Settlement Class Representative.

After this Court granted preliminary approval, the Settlement Administrator successfully disseminated Notice to the Settlement Class. Direct Notice was provided directly to 5,980 unique Settlement Class Members via U.S. First Class Mail and email. Class Notice reached the vast majority the Class (91%), easily meeting the due process standard. The Notice was written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement website, make a claim and how to opt-out or object to the Settlement. No Settlement Class Members have opted out and none have objected.

This Motion is unopposed. For these reasons and the others explained below, the proposed Settlement satisfies Federal Rules of Civil Procedure Rule 23(e)(2)'s requirements that a class settlement be fair, reasonable, and adequate, and Plaintiff respectfully requests that the Court issue final approval of the Settlement. Plaintiff and Class Counsel further request that the Court approve

1

a reasonable service award of $10,000 to the Representative Plaintiff, attorneys' fees of $65,000, litigation expenses of $850.66 and reimbursement of the Claims Administration costs.

## II. SUMMARY OF SETTLEMENT AND NOTICE PROCESS

Class Counsel refers to the preliminarily-approved Class Action Settlement and Release as "SA" in this Motion. (Doc. 47-1). Under the SA, Defendant will pay $195,000 for a limited release of Class Members' claims: only those claims actually alleged in the Action or that could have been alleged based on the facts stated in the operative Complaint, consistent with principles of *res judicata.* SA §§ 1.26, 8.1. Further key terms include:

***Class Definition.*** The Settlement Class is defined as "all individuals residing in the United States to whom Defendant or its authorized representative sent notice of the Data Incident discovered on or about December 5, 2022, who received such notice by the date this Settlement Agreement was executed." Excluded from the Settlement Class are: (a) the Judge presiding over the Lawsuit, any members of the Judges' staff, and immediate members of the Judge's family, (b) officers, directors, members and shareholders of Defendant, (c) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class; (d) the successors and assigns of any such excluded persons, and (e) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Breach or who pleads *nolo contendere* to any such charge. SA § 1.35.

***Net Settlement Fund.*** The $195,000 Gross Settlement Fund is <u>non-reversionary</u>, and no amount will revert back to Defendant. The "Net Settlement Fund" will be distributed to Class Members who submit a claim and will be calculated by deducting Attorneys' Fees and Costs, the Class Representative Service Awards and Claims Administrator costs. These distributions are further summarized as follows:

***Attorneys' Fees and Costs.*** The settlement provides for an attorneys' fees and costs award in an amount not to exceed $65,000, which is one-third of the Settlement Fund, plus reasonable litigation costs and expenses. SA § 1.24. Counsel has devoted numerous hours to and faced significant risks[1] in the matter's prosecution, incurred ordinary litigation costs over the past two years, and expended over 300 hours on this case. Van Note Decl. ¶ 16. Notably, this amount does not account for additional future expenses in overseeing the settlement process, making appearances, filing court documents, ensuring claims administration compliance with this Court's orders, etc. Van Note Decl. ¶ 18.

***Service Award.*** The Settlement also provides for a Service Award to Representative Plaintiff of $10,000 for his time, risk and effort in bringing this lawsuit, representing the large class, and in consideration for the claims released.[2] S.A. § 3.3. The proposed Service Award is also reasonable given the minimal impact this amount will have on any settling Class Member's level of recovery.

***Settlement Administration Costs.*** The Settlement allocates administration costs total $20,850—a reasonable amount given the size of the Class and the work required to send the Notice, process settlement payments, establish and update a settlement website and communicate extensively with Class Members and Class Counsel.

***Results of the Notice Process.*** In accordance with the Court's grant of preliminary approval, the Settlement Administrator Atticus Administration, LLC ("Atticus") sent the Notices

---

[1] Notably, post-judgment, Class Counsel will be required, *inter alia*, to stay in contact with the claims administrator to ensure payment of the settlement proceeds to all Class Members, to communicate with the Class Members themselves and other attorneys, and report compliance with the terms of the Court's final approval order. Attorney fee awards in common funds cases are, thus, intended to compensate class counsel for work performed both before *and after* the date of judgment.

[2] *See*, Declaration of the Representative Plaintiff, submitted herewith.

3

by first class mail to all Class Members at their last known addresses, updated using the National Change of Address Database as well as via email. Challenges to the Notice process were non-existent. The Claims Deadline was January 9, 2025. According to Atticus, there were 106 claims, with 102 deemed valid. Additionally, no Settlement Class Members opted out or objected. The Declaration of Bryn Bridley of Atticus provides additional details about the Notice process.

***Distribution to Class.*** Each Settlement Class Member who submits a valid and timely claim form will be entitled to benefits under the Settlement. The distribution was outlined in the Notices and Claims Form already approved by this Court.

### III. CASE SUMMARY

**A. Factual Allegations**

On or about December 5, 2022, Defendant MTC Holsters, LLC d/b/a Crossbreed Holsters ("Crossbreed" or "Defendant") discovered unauthorized activity on its internal computer systems. Declaration of Laura Van Note, ("Van Note Decl.") ¶ 3. On or about January 17, 2023, Defendant began sending Notice to affected individuals. This Notice stated, in part, that "irregular activity" was discovered on Crossbreed's network that began on December 5, 2022. The Notice further stated that the unauthorized actor compromised Plaintiff's and Class Members' names, email addresses, phone numbers and prepaid card information such as card numbers, expiration dates and CVV codes. Van Note Decl. ¶ 4. Plaintiff filed the Complaint on March 27, 2023, alleging (i) Negligence, (ii) Breach of Confidence, (iii) Breach of Implied Contract, (iv) Breach of the Implied Covenant of Good Faith and Fair Dealing and (v) Breach of the Fiduciary Duty of Confidentiality. Even prior to filing the Action, Proposed Class Counsel were armed with a detailed factual understanding of Defendant's operations and data breaches in general. Van Note Decl. ¶ 5.

4

## B. Litigation History

### 1. Discovery

Defendant filed a Motion to Dismiss. On July 27, 2023 the Court granted the Motion in part. The Parties agreed to mediate and engaged in informal discovery efforts, including a voluntary exchange of confirmatory information to facilitate settlement discussions. Van Note Decl. ¶ 6.

### 2. Negotiations and Mediation

Class Counsel conducted a thorough investigation into the facts of this Action. The Parties engaged in extensive informal discovery and production of data for the putative Class Members to perform an analysis and valuation of all claims. Prior to mediation, the Parties exchanged information and documents to investigate the veracity, strength and scope of the claims, and to allow analysis and evaluation of the claims and Defendant's defenses thereto. Representative Plaintiff has vigorously prosecuted this case, and Defendant has vigorously contested it. Class Counsel believes that the documents exchanged and analyzed in preparation for mediation, as well as the Parties' discussions during mediation was sufficient for the Parties to make an informed decision about a fair resolution of this Action. Van Note Decl. ¶ 9.

On January 17, 2024, the Parties participated in a mediation before experienced mediator the Honorable Charles Atwell (Ret.). Van Note Decl., ¶ 11. At mediation, the Parties exchanged information and documents, including a substantial amount of information requested in Plaintiff's prior informal discovery requests, and engaged in intensive discussions regarding their evaluations of the litigation and various aspects of the litigation, including the risks and delays of further litigation, the risks to the Settling Parties of proceeding with class certification, the law relating to the allegations, the evidence produced and analyzed and the possibility of appeals, among other

5

Case 6:23-cv-03129-SRB     Document 57     Filed 01/31/25     Page 9 of 20

things. Due to the Parties' extensive experience in data breach and class action litigation, the Parties were able to determine the principle of the matter relatively quickly and spent the majority of the mediation discussing the nature of and size of the proposed Settlement Fund. The Parties were able to come to an agreement at mediation and ended the mediation session with a settlement in principle. No side agreements were made (i.e., the Settlement Agreement is the only agreement between the Parties). The Parties reached an agreement in principle on the material terms of the Settlement before negotiating on attorneys' fees and costs. Van Note Decl. ¶ 10.

The Parties diligently worked on a Notice Plan, Notices, Claim Forms and other exhibits alongside the long-form settlement agreement until filing this Motion for Preliminary Approval. Many redline drafts were exchanged. Van Note Decl. ¶ 11. The long-form Settlement Agreement was finalized and signed as of October 3, 2024. The requested Attorneys' Fees and Costs of up to $65,000 are only one-third of the total Settlement fund and will, almost certainly, represent a negative multiplier on Proposed Class Counsel's lodestar by the time of Final Approval, considering that Proposed Class Counsel have vigorously litigated this matter including briefing their opposition to Defendant's Motion to Dismiss and engaging in substantial arm's-length negotiations with Defendant to bring about a successful resolution of this matter. Van Note Decl. ¶ 12.

The claims process here was designed to be simple and fast, yet comprehensive enough to ensure fair and equitable treatment of potential individual damages. All Settlement Class Members may submit a claim that allows them to elect benefits, depending on their individual facts. Claimants can claim out-of-pocket expenses such as unreimbursed payment card fees or bank fees, cell, internet or text charges, unreimbursed costs or charges for obtaining credit reports, credit freezes or credit monitoring or identity theft protection services, postage costs and lost time by

6

Case 6:23-cv-03129-SRB    Document 57    Filed 01/31/25    Page 10 of 20

simply checking the relevant box and inputting the amount claimed. Settlement Class Members could also elect an alternative cash payment. Van Note Decl. ¶ 13.

## IV. LEGAL ARGUMENT

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *See, e.g.*, *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11.41 (4th ed.); *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). In this regard, the judgment of class counsel in entering into a proposed class settlement is an important consideration. *Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (D.D.C. 2015) (crediting the judgment of class counsel, who was experienced in litigating and settling complex cases including class actions, that the settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-CV-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("[I]t is the considered judgment of experienced counsel that this

7

settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

Plaintiff brings this Motion pursuant to Federal Rules of Civil Procedure Rule 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. (Doc 52). For the same reasons described in Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (Doc 47), this Court should certify the Class for purposes of final approval of the settlement. Next, the Court must determine whether the settlement is "fundamentally fair, adequate, and reasonable." *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 U.S. Dist. LEXIS 25595, at *8 (D. Mont. Feb. 11, 2015). Plaintiff analyzes the relevant factors below.

A. **The Settlement Falls Within the Range of Reasonableness**

The 2018 amendments to Rule 23 direct the Parties to present proposed class settlements "in terms of a shorter list of core concerns." Fed. R. Civ. P. Rule 23(e)(2), 2018 Adv. Comm. Notes. These concerns, which Rule 23(e)(2) now requires courts to consider before approving a class settlement, include two concerns bearing on procedural fairness and two bearing on substantive fairness. *Id*. The two procedural concerns are (i) whether plaintiff and their counsel have adequately represented the class and (ii) whether the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. Rule 23(e)(2)(A)-(B). The two substantive concerns are (i) whether the relief provided for the class is adequate and (ii) whether the proposed settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(C)-(D).

Here, these four core concerns favor the proposed Settlement.

8

### 1. Plaintiff and Counsel Have Adequately Represented the Class

The first procedural concern asks whether the proposed settlement was the result of adequate representation. Fed. R. Civ. P. Rule 23(e)(2)(A). One of the hallmarks of adequate representation is a thorough investigation and assessment of the class members' claims. *See* Adv. Comm. Note.

Here, Class Counsel was well prepared to negotiate a beneficial settlement for Class Members. In addition to a comprehensive pre-filing investigation, Class Counsel sought early discovery that went to the heart of the case and had extended negotiations with Defendant. Van Note Decl. ¶¶ 6-7, 9-11. Representative Plaintiff will request a service payment of $10,000 for his participation in this litigation. Representative Plaintiff researched and identified qualified counsel, participated in the settlement process, and risked being further targeted for identity theft by putting his name on this litigation. Van Note Decl. ¶ 25.

### 2. The Settlement Resulted from Informed, Arm's-Length Negotiations

The Settlement Agreement was negotiated by arm's-length bargaining between experienced counsel. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002). Here, the Parties' Settlement was reached after contentious negotiations consisting of a full-day mediation before well respected and experienced neutral, Hon. Charles Atwell (Ret.). Van Note Decl. ¶¶ 9-11. The Parties did not discuss Attorneys' Fees, Service Awards or Settlement Administration costs until after reaching agreement on the Class Settlement. Van Note Decl. ¶ 11. Following the mediation with Judge Atwell, where the Parties reached a settlement in principle, the Parties engaged in ongoing negotiations regarding the various terms set forth in the Settlement Agreement. Van Note Decl. ¶¶

12-13. Taking into consideration the Parties' preparation for the mediation, the length of negotiations and the involvement of a highly qualified private mediator, the proposed Settlement should be presumed procedurally fair. Fed. R. Civ. P. Rule 23(e)(2)(B), 2018 Adv. Comm. Note.

### 3. The Relief Provided for the Class Is Adequate

The proposed Settlement provides meaningful monetary recovery in addition to important non-monetary relief. The benefits conferred are fair and adequate compared to other similar cases. The collective relief is even more favorable considering the factors under Rule 23(e)(2)(C) While Plaintiff believes his case is strong, ongoing litigation will require Plaintiff and the Class to take on significant risks of expenses, delays and negative outcomes. Data breach cases are particularly complex and expensive by nature. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) [hereinafter "*In re Equifax*"] (recognizing the complexity and novelty of issues in data breach class actions). Courts explicitly recognize data breach cases as among the most risky and uncertain of all types of class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

The risk, expense and complexity of further litigation is significant. If the case were to proceed without settlement, the Parties will face the following hurdles: (1) expensive and extremely time-consuming ESI-related discovery efforts that often involve developing appropriate ESI protocols and then compiling and reviewing voluminous document productions of a highly technical nature; (2) due to the complexity of the ESI, the Parties will almost certainly need to retain cybersecurity experts who can parse and evaluate the data among other issues[3] and (3)

---

[3] In data breach actions, expert testimony is usually required to evaluate issues such as the nature of the alleged data breach, the threat actors who exfiltrated data, identifying the presence of the stolen data on the dark web, the quality of cybersecurity measures in place at the time of the breach

substantial motion practice on an array of issues such as standing, causation, damages, and injunctive relief. Van Note Decl. ¶ 17. There is also substantial risk in Plaintiff obtaining and maintaining class certification. Class certification outside the settlement context poses a significant challenge. Van Note Decl. ¶ 18.

Taking this case to trial and evaluating potential damages would be highly risky as few, if any, data breach trials have been conducted. The reality is that even if Plaintiff did successfully obtain a substantial verdict, there are significant questions whether this particular Defendant (which is not a large entity with deep pockets) can satisfy the judgment. Van Note Decl. ¶ 19. In short, without the Settlement, the parties would face years of risk, uncertainty, complexity and expense, and these challenges would remain through certification, trial and appeals. All of these issues would persist without any guarantee of relief for the class. Van Note Decl. ¶ 20.

4. **The Settlement Structure Is Fair, Reasonable, and Adequate**

"A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016). Because Class Members may have suffered varying types and degrees of injury, the Settlement permits Settlement Class Members to receive cash payments consistent with the categories of damages they incurred (i.e., lost time and/or unreimbursed expenses) and in what amount. In this respect, the Settlement achieves customized recovery to

---

and any necessary remediation. *In re Anthem Data Breach Litig.* 327 F.R.D. 299 , 319-326 (N.D. Cal 2018) (as condition of a settlement, Defendant implemented cybersecurity controls and reforms recommended by Plaintiffs' cybersecurity experts and the experts would also monitor Defendant's annual cybersecurity reports for compliance); *Quality Plus Servs. V. Nat'l Union Fire Ins. Co.* U.S. Dist. LEXIS 7337 (E.D. Va 2020) at *31 (cybersecurity expert retained to determine attacker's country of origin). In sum, if a case does not resolve after the parties engage in very basic discovery, it is almost inevitable that experts will need to be retained and litigation costs will rise.

11

each Class Member and treats them fairly and equitably. As such, this type of claims process has been approved in numerous other cases involving data breaches and privacy infringements. *See, e.g.*, *In re Equifax*, 2020 WL 256132 at **2, 8; *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2020 WL 4212811, *12 (N.D. Cal. July 22, 2020), aff'd, *Schwartz v. Yahoo! Inc.*, No. 20-16633 (9th Cir. June 27, 2022) [hereinafter "*In re Yahoo!*"]; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 325, 328, 332 (N.D. Cal. 2018).

The claims process here was designed to be simple and fast, yet comprehensive enough to ensure fair and equitable treatment of potential individual damages. Van Note Decl. ¶ 13.

Courts have approved similar processes in data breach cases (*see, e.g.*, *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 365, 378 (N.D. Cal. 2021); *In re Yahoo!*, *supra*, 2020 WL 4212811 at *12), and the proposed plan here is favorable by comparison to numerous other settlements requiring documentation for analogous cash payments (*see, e.g.*, *In re Anthem*, 327 F.R.D. at 325, 328, 332 (approving claim process requiring supporting documentation for claims of lost time and out-of-pocket expenses)). The fact that only a modest number of Settlement Class Members have taken advantage of the benefits offered under the Settlement does not change the fact that the Settlement is fair. The overwhelming majority of the Class received Notice of the Settlement. Class Counsel has no way to further incentivize Class Members to make claims, other than to make these robust amounts available if they do make claims. Put another way, the Settlement is a complete success because it created a process to compensate those Settlement Class Members who, in fact, suffered actual damages. Van Note Decl. ¶ 21.

    5.  **The Settlement Falls Within the Range of Possible Approval**

When considering whether the amount of a Settlement is adequate, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for

overall fairness." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). "A cash settlement amounting to only a fraction of the potential cash recovery (and the present proposed settlement is not such a recovery) does not in itself render the settlement unfair or inadequate." *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987), quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) at 455. Plaintiff has analyzed the potential class recovery and offers the following explanation of the factors bearing on the amount of the compromise:

> This Data Breach involves only names and payment card information. Accordingly, the remaining compensable claims are for lost time and modest damages for out-of-pocket expenses (e.g., postage, paying for credit freezes, etc.). Reimbursement for Ordinary Losses and Attested Time of $500 per person represents is more than enough to satisfy the vast bulk of potential claims. Given the type of information involved, these represents an excellent outcome for the Class. Van Note Decl. ¶ 22.

### 6. Experienced Counsel Recommend Approval

Class Counsel has substantial experience in complex class action litigation, including data privacy cases. Van Note Decl. ¶¶ 30-34. Class Counsel fully endorse the Settlement as falling within the range of reasonableness. Van Note Decl. ¶¶ 35-37.

### V. THE NOTICE PLAN MET THE REQUIREMENTS OF DUE PROCESS

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985).

As detailed in the supporting Declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). Ultimately, Atticus delivered 5,629 Summary Notices, equating to a delivery success percentage (or "reach rate") of 91.13%. Decl. of Brynn Bridley ("Bridley Decl.") ¶ 9. A reach rate of 91.13% is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide for Judges*", 27 (3d Ed. 2010).

## VI. ATTORNEYS' FEES, COSTS, SERVICE AWARD AND SETTLEMENT ADMINISTRATION FEES

### A. Class Counsel should be awarded their attorneys' fees and costs

Class Counsel seeks an attorneys' fees award of one-third of the settlement fund, or $65,000 plus litigation costs of $850.66. As detailed in Plaintiff's Motion for Attorneys' Fees and Costs and Service Award, courts have frequently awarded attorneys' fees ranging up to 36% in class actions *Sciaroni v. Target Corp. (In re Target Corp. Customer Data Sec. Breach Litig.)*, 892 F.3d 968, 977 (8th Cir. 2018). Van Note Decl. ¶ 23. Class Counsel have also reasonably and necessarily incurred $850.66 in expenses. Van Note Decl. ¶ 24. Such costs were reasonable, necessary and are appropriate for reimbursement. Because the costs incurred by Plaintiff's counsel were reasonable and necessary, the Court should approve reimbursement.

### B. Plaintiff should receive a Service Award

The Court should approve the Service Award for the named Plaintiff in the amount of $10,000 for Plaintiff's efforts and for his courage in stepping forward. Van Note Decl. ¶ 26. The requested Service Awards is in the range of other awards in the Eighth Circuit. See *Caligiuri*, 855 F.3d at 867 ("[C]ourts in this circuit regularly grant service awards of $10,000 or greater."); *Huyer*

14

Case 6:23-cv-03129-SRB   Document 57   Filed 01/31/25   Page 18 of 20

*v. Njema*, 847 F.3d 923, 941 (8th Cir. 2017) (affirming approval of settlement that included $10,000 service awards to named plaintiffs).

    **C.    Reimbursement of Settlement Administration fees is appropriate**

Representative Plaintiff respectfully requests approval of Atticus' settlement administration costs and fees. Atticus' total fees are submitted a competitive bid of $20,850 —a very reasonable amount given the size of the Class and the work required to send the Notice, process settlement checks, establish a website and communicate with Class Members and counsel. Van Note Decl. ¶ 27.

**VII.    CONCLUSION**

For these reasons, Plaintiff respectfully requests the Court grant final approval of the proposed Class Action Settlement.

Dated:  January 31, 2025                           Respectfully Submitted,

                                                               By: */s/ Laura Van Note*
                                                                    Laura Van Note, Esq., MO# 66292
                                                                    **COLE & VAN NOTE**
                                                                    555 12th Street, Suite 2100
                                                                    Oakland, California 94607
                                                                    Telephone: (510) 891-9800
                                                                    Facsimile: (510) 891-7030
                                                                    Email:    lvn@colevannote.com

## CERTIFICATE OF SERVICE

      I hereby certify that, on January 31, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served today on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF and on counsel in the related cases to their respective emails per the below service list.

                                              /s/Laura Grace Van Note
                                              Laura Grace Van Note, Esq.